Dennis F. Dunne
Evan R. Fleck
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Andrew M. Leblanc
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street, NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500

*Counsel for Official Committee of*
*Unsecured Creditors of Arcapita Bank B.S.C.(c), et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
:
In re:                                                    :
:                              Chapter 11
ARCAPITA BANK B.S.C.(c), et al.,                          :   Case No. 12-11076
:                              (Jointly Administered)
        Debtors.                                          :
:
-----------------------------------------------------------x
:
OFFICIAL COMMITTEE OF UNSECURED                           :
CREDITORS OF ARCAPITA BANK B.S.C.(C),                     :
ET AL.,                                                   :
:                              Adv. Pro. No. _____
        v.                                                :
:
BAHRAIN ISLAMIC BANK                                      :
:
-----------------------------------------------------------x

# COMPLAINT

The Official Committee of Unsecured Creditors (the "Committee") of Arcapita

Bank B.S.C.(c) ("Arcapita") and each of its affiliated debtors-in-possession (collectively, the

"Debtors," with the bankruptcy estate being the "Arcapita Estate"), by and through its attorneys, Milbank, Tweed, Hadley & McCloy LLP, and on behalf of the Debtors, alleges as follows:

## NATURE OF PROCEEDING

1. This adversary proceeding for breach of contract, turnover, the avoidance of a preferential transfer, violation of the automatic stay, and claim disallowance arises from a short-term debt investment for $10 million (the "Placement") that Arcapita made with Bahrain Islamic Bank ("BIB") on March 14, 2012—just five days before Arcapita's bankruptcy filing on March 19, 2012.

2. Arcapita and BIB entered into the Placement pursuant to an agreement (the "Placement Agreement") that required BIB to pay Arcapita the Placement funds, plus generated proceeds, less agency fees (the "Placement Proceeds"), upon maturity. The Placement matured on March 29, 2012, resulting in more than $10 million owed by BIB to Arcapita. BIB has not paid any of this debt, and continues to owe Arcapita $10,002,292 in outstanding Placement Proceeds. Despite Arcapita's demands, BIB has refused to turn over these funds.

3. The Placement—and resulting creation of more than $10 million worth of debt owed to Arcapita by BIB—did not occur on a blank financial slate. At the time of the Placement, Arcapita owed nearly $10 million in unmatured debt to BIB (the "Antecedent Debt") as a result of certain investment transactions entered into by the parties beginning in December 2011. The more than $10 million that Arcapita transferred to BIB pursuant to the Placement was thus sufficient to cover the Antecedent Debt.

4. BIB and Arcapita entered into the Placement on the eve of Arcapita's bankruptcy filing, while Arcapita was insolvent. To the extent that the Placement was made on account of the Antecedent Debt, it is an avoidable preference.

5. Before the Placement on March 14, 2012, Arcapita only rarely made similar placements with BIB and had not done so for approximately one year. As a result of the Placement, BIB was able to recover its entire claim to the Antecedent Debt rather than be exposed to the lengthy bankruptcy process and suffer the same decreased recoveries that all of Arcapita's non-preferred creditors received through Arcapita's chapter 11 proceedings.

6. The Committee, on behalf of the Arcapita Estate, brings this adversary proceeding to, among other things, compel BIB to comply with its obligations under the Placement Agreement and turn over the outstanding funds currently due and owing to the Arcapita Estate or, alternatively, to have the Placement avoided and recovered as an improper payment of the Antecedent Debt under sections 547(b) and 550 of the United States Bankruptcy Code.

## JURISDICTION, VENUE AND STATUTORY PREDICATES

7. On March 19, 2012, the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code.

8. On April 5, 2012, the U.S. Trustee appointed the Committee pursuant to section 1102(a) of the Bankruptcy Code.

9. On August 2, 2013, the Court entered the Order Granting Committee's Motion for Leave, Standing and Authority to Prosecute Avoidance Claims [Docket No. 1411], which, *inter alia*, authorized the Committee to pursue the claims asserted herein against BIB.

10. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

11. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

12.   Plaintiff is the Official Committee of Unsecured Creditors for Arcapita and each of its affiliated debtors-in-possession.  Arcapita was licensed as an Islamic wholesale bank by the Central Bank of Bahrain.  Founded in 1996, Arcapita (collectively, with its affiliates, the "Arcapita Group"), was a leading global manager of *Shari'ah*-compliant alternative investments and operated as an investment bank.  Prior to its bankruptcy filing, the Arcapita Group employed 268 people and, together with the other Debtors and their non-Debtor subsidiaries, had offices in Atlanta, London, Hong Kong, and Singapore in addition to its headquarters in Bahrain.

13.   Defendant BIB was established in 1979 as the first Islamic commercial bank in Bahrain.  BIB is owned by, among other investors, the Islamic Development Bank and the Kuwait Investment Company.

14.   BIB maintains correspondent bank accounts in the United States at Deutsche Bank, Standard Chartered Bank, and JP Morgan Chase Bank.  In connection with these accounts, BIB has designated an agent for service of process in the United States as required under the Patriot Act and participates in the Clearing House Interbank Payments System, located in New York.

15.   To effectuate the Placement, Arcapita, at BIB's direction, transferred funds from its account at JP Morgan Chase Bank in New York to BIB's correspondent bank account at JP Morgan Chase Bank in New York.

## FACTUAL BACKGROUND

### A. BIB Agreement

16.     On May 7, 2006, Arcapita entered into an agreement with BIB (the "BIB Agreement").

17.     Pursuant to the BIB Agreement, BIB would transfer funds to Arcapita for the purchase of certain commodities. After purchasing the commodities, Arcapita would sell the commodities, on BIB's behalf, to a third party in exchange for deferred payment on an agreed-upon maturity date. Arcapita also reserved the right under the BIB Agreement to purchase the commodities directly from BIB for its own account. On the maturity date, Arcapita would transfer the deferred payment to BIB, thereby returning to BIB the value of its investment, plus an agreed upon return.

18.     On or about December 1, 2011, pursuant to the BIB Agreement, BIB made two investments totalling nearly $10 million with Arcapita for the purchase of commodities on BIB's behalf.

19.     As of March 14, 2012—the date of the Placement—Arcapita had not transferred the deferred payments owed to BIB as a result of these transactions.

20.     BIB was thus a creditor of Arcapita to whom Arcapita owed the Antecedent Debt of $9,774,096.15.

21.     All of the Antecedent Debt was scheduled to mature within two weeks of the Placement.

22.     The BIB investments made pursuant to the BIB Agreement are identified below.

| BIB Investment Amount | Investment Date[1] | Maturity Date | Total Amount of Antecedent Debt as of March 14, 2012 |
|---|---|---|---|
| BHD1,800,000 | December 1, 2011 | March 22, 2012 | $9,774,096.15 |
| $5,000,000 | December 1, 2011 | March 23, 2012 | |

### B. Placement Agreement

23. On or about July 10, 2003, BIB and Arcapita entered into an investment agreement (previously defined as the "Placement Agreement").

24. Pursuant to the Placement Agreement, Arcapita appointed BIB to serve as its agent with respect to the purchase of certain commodities (each such investment a "placement"). Following BIB's purchase of commodities for Arcapita's account, BIB was obligated under the Placement Agreement to repurchase the same commodities from Arcapita on a deferred payment basis for an amount equal to the original investment, plus an agreed upon return. BIB was required to transfer this payment to Arcapita on the designated maturity date of the placement.

25. Arcapita did not enter into placement transactions with BIB as part of the ordinary course of its business.

26. Prior to March 2012, Arcapita and BIB only entered into five placements during the previous two years: four in May and June of 2010 and another in March of 2011.

---

[1] BIB made initial short-term investments with Arcapita on December 1, 2011 and then continuously rolled-over those investments at various intervals leading up to the chapter 11 filing date.

### C. <u>Placement</u>

27.  On March 14, 2012, pursuant to the Placement Agreement, Arcapita entered into the Placement for $10 million. The Placement had a prescribed maturity date of March 29, 2012.

28.  To execute the Placement, Arcapita, at BIB's direction, transferred $10 million in funds from its account at JP Morgan Chase Bank in New York to BIB's account at JP Morgan Chase Bank in New York.

29.  Arcapita was insolvent on March 14, 2012 when it (i) entered into the Placement and (ii) paid the $10 million in Placement funds to BIB.

30.  Just five days later, on March 19, 2012, Arcapita filed petitions for relief under chapter 11 of the Bankruptcy Code.

31.  On March 29, 2012, BIB was required pursuant to the Placement Agreement to return to Arcapita its Placement of $10 million, plus a profit at the rate of .55% per annum, minus BIB's agency fee, resulting in Placement Proceeds in the amount of $10,002,292.

### D. <u>BIB's Failure to Complete the Placement Upon Maturity</u>

32.  Notwithstanding its binding obligations under the Placement Agreement, BIB failed to deliver any of the Placement Proceeds due to Arcapita upon maturity.

33.  On or about April 30, 2012, Arcapita, through its counsel, Gibson, Dunn & Crutcher LLP, sent a letter addressed to Mohammed Ebrahim Mohammed, Chief Executive Officer of BIB. The letter demanded payment of the Placement Proceeds, noting that the funds "are property of the bankruptcy estate of Arcapita and must immediately be remitted to Arcapita . . . pursuant to the provisions of section 542 of the Bankruptcy Code," and BIB's "failure

- 7 -

immediately to turnover these funds to Arcapita will force us to commence an action to compel turnover."

34. On or about June 25, 2012, BIB, through its counsel, K&L Gates LLP, sent a letter addressed to Arcapita's counsel refusing to turn over the Placement Proceeds. BIB claimed to be taking a "setoff" on account of the Antecedent Debt.

35. BIB has neither sought nor obtained an order of the Court allowing it to set off the Antecedent Debt against the Placement Proceeds.

36. The outstanding balance of Placement Proceeds due and owing from BIB to the Arcapita Estate is $10,002,292. BIB has failed to turn over any portion of these funds to the Arcapita Estate.

37. To the extent Arcapita and BIB entered into the Placement as a means of paying the Antecedent Debt, this allowed BIB to recover more on its claim against Arcapita than it otherwise would have been able to recover had the claim been resolved through Arcapita's chapter 11 proceedings or through a chapter 7 liquidation.

## COUNT I
### (Breach of the Placement and the Placement Agreement)

38. The Committee repeats, re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 37 as though fully set forth herein.

39. The Placement is a valid, enforceable, and legally binding contract between Arcapita and BIB.

40. BIB is in default under the Placement and the Placement Agreement for failing to transfer the Placement Proceeds as required on the maturity date.

41. Thus, BIB has breached its obligations to Arcapita under the Placement.

42. The Court granted the Committee standing to prosecute claims relating to the Placement on behalf of the Arcapita Estate. As such, the Committee, on behalf of the Arcapita Estate, is entitled to (i) an award of damages equal to $10,002,292, plus interest, and (ii) reimbursement of, among other things, fees and costs (including reasonable attorneys' fees) expended in effecting compliance with the Placement, as well as fees and costs expended in any proceeding to recover sums owed under the same.

## COUNT II
### (Turnover of Assets – 11 U.S.C. §§ 541, 542 and 550)

43. The Committee repeats, re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 42 as though fully set forth herein.

44. The Placement is a valid, enforceable, and legally binding contract between Arcapita and BIB.

45. The Placement is specific in its terms as to both the maturity date of BIB's obligation and the amount of that obligation. The Placement matured on March 29, 2012. At maturity, BIB owed Arcapita $10,002,292 on account of the Placement.

46. By virtue of the Placement, after accounting for amounts previously remitted, BIB is wrongfully in possession of property of the Arcapita Estate in the amount of $10,002,292, plus accrued interest thereon from the Placement's maturity date.

47. The amount owed by BIB to the Arcapita Estate on account of the Placement is payable immediately without legitimate offset of any kind.

48. As a result of the foregoing, the Arcapita Estate is entitled to (i) an award of damages equal to $10,002,292, plus interest, and (ii) reimbursement of any and all fees and costs (including reasonable attorneys' fees) expended in effecting compliance with the

Placement, as well as fees and costs expended in any proceeding to recover sums owed under the same.

## COUNT III
### (Preferential Transfer – 11 U.S.C. §§ 547 and 550)

49. The Committee repeats, re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 48 as though fully set forth herein.

50. Arcapita transferred the placed funds to BIB under the Placement (the "Placement Transfer") on March 14, 2012.

51. At the time of the Placement Transfer, BIB was a "creditor" of Arcapita within the meaning of section 101(10) of the Bankruptcy Code.

52. The Placement Transfer was to or for the benefit of BIB.

53. The Placement Transfer was made on account of the Antecedent Debt owed by Arcapita to BIB.

54. The Placement Transfer was made while Arcapita was insolvent and within 90 days before Arcapita filed its petition for relief under chapter 11 of the Bankruptcy Code.

55. The Placement Transfer enabled BIB to receive more than it would receive if (i) this case was a case under chapter 7 of the Bankruptcy Code; (ii) the transfer had not been made; and (iii) BIB received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

56. The Placement Transfer constitutes a preferential transfer avoidable pursuant to section 547(b) of the Bankruptcy Code and recoverable from BIB pursuant to section 550(a).

57. As a result of the foregoing, the Committee is entitled to a judgment pursuant to sections 547(b) and 550 of the Bankruptcy Code: (i) avoiding the Placement Transfer; (ii) directing that the Placement Transfer be set aside; and (iii) recovering the amounts due and owing under the Placement for the benefit of the Arcapita Estate.

**COUNT IV**
**(Violation of Automatic Stay – 11 U.S.C. §362)**

58. The Committee repeats, re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 57 as though fully set forth herein.

59. Pursuant to sections 362(a)(3) of the Bankruptcy Code, upon the commencement of a chapter 11 case, "any act to . . . exercise control over property of the estate" constitutes a violation of the automatic stay.

60. Pursuant to section 362(a)(7) of the Bankruptcy Code, "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor" also constitutes a violation of the automatic stay.

61. BIB has and continues to exercise control over the Placement Proceeds, which are property of the Arcapita Estate.

62. On or about June 28, 2012, BIB informed Arcapita by letter that it would not relinquish control over the Placement Proceeds. BIB claimed to be taking a setoff on account of the Antecedent Debt.

63. BIB has neither sought nor obtained an order of the Court allowing it to set off the Antecedent Debt against the Placement Proceeds.

64. BIB's actions are in direct violation of the automatic stay imposed by section 362 of the Bankruptcy Code.

65. As a result of the foregoing, the Arcapita Estate is entitled to (i) an award of damages equal to $10,002,292, and (ii) reimbursement of any and all fees and costs (including reasonable attorneys' fees) associated with BIB's violation of the automatic stay.

## COUNT V
## (Claim Objection – 11 U.S.C. § 502(d))

66. The Committee repeats, re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 65 as though fully set forth herein.

67. The Committee has asserted causes of action, enumerated above, against BIB that seek turnover of the Placement Proceeds pursuant to sections 542 and 550 of the Bankruptcy Code or, alternatively, avoidance of the Placement Transfer and recovery of the Placement Proceeds pursuant to sections 547 and 550 of the Bankruptcy Code.

68. Arcapita included on its Schedule F liabilities in the amount of $9,774,096.15 owing to BIB on account of the Antecedent Debt. Absent objection by a party in interest or an amendment to Schedule F, BIB will have allowed claims against Arcapita in the amount of $9,774,096.15.

69. The Committee is entitled to a judgment under section 502(d) of the Bankruptcy Code disallowing all claims held by BIB, including claims on account of the Antecedent Debt, pending payment or turnover of the Placement Proceeds.

## PRAYER FOR RELIEF

**WHEREFORE**, the Committee respectfully prays that the Court award the following relief:

(i) payment to the Arcapita Estate of $10,002,292 plus all interest that may be earned thereon from the March 29, 2012 maturity date of the Placement;

(ii) disallowance of any and all claims that BIB holds against the Arcapita Estate;

(iii) reimbursement of, among other things, fees and costs (including reasonable attorneys' fees) expended in effecting compliance with the Placement, as well as fees and costs expended in any proceeding to recover sums owed under the same; and

(iv) such other and further relief as the Court deems just.

Dated: August 26, 2013
New York, New York

By: */s/* Evan R. Fleck
Dennis F. Dunne
Evan R. Fleck
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Andrew M. Leblanc
1850 K Street, NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500

Counsel for the Official Committee of Unsecured Creditors of Arcapita Bank B.S.C.(c), *et al.*